FILED
CLERK

3:30 pm, Feb 02, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FRANK PROCHILO,

                                        Plaintiff,

                    -against-                                          ORDER
                                                                      16-CV-417(SJF)(SIL)

CIFARELLI'S CRYSTAL CLEAR CLEANING CORP.,
d/b/a CRYSTAL CLEAR WINDOW CLEANING,
and DAVID CIFARELLI,

                                        Defendants.
------------------------------------------------------------------------X
FEUERSTEIN, District Judge:

I.      Introduction

        On or about January 26, 2016, plaintiff Frank Prochilo ("plaintiff"), by counsel[1],

commenced this employment discrimination action against defendants Cifarelli's Crystal Clear

Cleaning Corp., d/b/a Crystal Clear Window Cleaning ("Crystal Clear"), and David Cifarelli

("Cifarelli") (collectively, "defendants"), pursuant to the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101, *et seq.*; the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law §§ 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL").

Pending before the Court are: (a) plaintiff's application for the appointment of *pro bono* counsel;

(b) defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking

_____

        [1] Although plaintiff was represented by counsel when this case was commenced, by
minute order entered on October 19, 2016, the Honorable Steven I. Locke, United States
Magistrate Judge, granted his counsel's motion to withdraw and advised plaintiff that he must
either retain new counsel or proceed *pro se* in this action.  (*See* Docket Entry ["DE"] 26).
Plaintiff has since been prosecuting this action *pro se*, although he filed an application for the
appointment of counsel after defendants served him with their motion for summary judgment,
(DE 40), which is denied for the reasons set forth below.

1

summary judgment dismissing plaintiff's claims against them in their entirety; and (c)

defendants' application to strike a letter, dated March 28, 2017, filed by plaintiff in further

opposition to their motion for summary judgment.  For the reasons set forth below, plaintiff's

application for the appointment of counsel and defendants' application to strike plaintiff's March

28, 2017 letter are denied, and defendants' motion for summary judgment is granted.


II.     Background

        A.      Factual Background[2]

        In 2009 or 2010, plaintiff opened a window cleaning business, Commack Window

Cleaning ("CWC").  (Defendants' 56.1 Statement of Material Facts ["Def. 56.1"], ¶ 1).  In 2012,

---

[2] Only those assertions in the parties' statements pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1") that are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure have been considered by the Court. *See* Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion."); *F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 343, n. 2 (E.D.N.Y. 2014) ("Statements without citation to evidence may be properly ignored by the court."); *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 322 (S.D.N.Y. 2010) ("Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (quotations, alterations and citation omitted)). Moreover, only those facts that are material to the disposition of defendants' motion, *i.e.*, that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)), are set forth herein.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (brackets in original) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505)).  The following facts are undisputed unless otherwise indicated.

plaintiff sold CWC to Cifarelli and his wife, Lisa Cifarelli ("Lisa"), for between seventy-five thousand dollars ($75,000.00) and seventy-seven thousand dollars ($77,000.00).  (*Id.*, ¶¶ 2-3). Upon the sale, plaintiff assisted in the transition of customers to defendant and in training and supervising an employee.  (*Id.*, ¶ 4).

In January 2013, plaintiff became an employee of defendants and performed job estimates, (Def. 56.1, ¶ 5), primarily in Suffolk County and Nassau County, (*id.*, ¶ 22), although he occasionally "would be dispatched to Queens, Manhattan, Kings, and Connecticut."  (*Id.*)

From June 2013 to October 20, 2013, plaintiff was hospitalized "for a variety of ailments, including a spinal fracture and osteomyelitis."  (Def. 56.1, ¶ 6).  Defendants were informed and aware of plaintiff's medical history and ongoing treatment during the course of his hospitalization.  (*Id.*, ¶ 7).  During plaintiff's period of hospitalization, defendants requested that plaintiff return to work, but he was unable to do so.  (*Id.*, ¶ 8).

In December 2013 or January 2014, plaintiff informed Cifarelli that since he determined himself to be disabled, he could not work eight (8)-hour days.  (Def. 56.1, ¶¶ 9-10).  In response, Cifarelli told plaintiff: (i) "'fine, whatever you can do is fine,' and reiterated his desire for [p]laintiff to return to work[,]" (*id.*, ¶ 11); and (ii) "not to worry about the amount of time [he] took or the amount of jobs he could complete."  (*Id.*, ¶ 12).  Thereafter, plaintiff returned to work for defendants on a part-time basis.  (*Id.*, ¶ 13).  Upon his return to work, plaintiff's "duties were limited and primarily consisted of performing estimates[,]" (*id.*, ¶ 14), which involved "physically walking around a prospective client's building with a clipboard and a pen."  (*Id.*, ¶ 15).

Although plaintiff was provided with a company vehicle at all times during the course of

his employment with defendants, he "complained that he was not issued a vehicle with an automatic transmission."  (Def. 56.1, ¶ 16).  However, plaintiff never (i) asked defendants to stop sending him out (A) "on work estimates," (*id.*, ¶ 18), or (B) "to do work that required driving," (*id.*, ¶ 19); or (ii) advised defendants that he was physically unable to perform the work or to drive.  (*Id.*, ¶¶ 18-19).

During his deposition, plaintiff testified that on January 29, 2015, he took his company vehicle to Resorts World Casino, with Cifarelli's permission, in order to "help [his] wife whose car broke down at that location."  (Declaration of Saul D. Zabell, Esq., in Support of Defendants' Motion for Summary Judgment ["Zabell Decl."], Ex. A at 124).  In addition, in his responses to defendants' First Request for Admissions, plaintiff admitted, *inter alia*, that with defendants' permission, he used the same company vehicle (with the automatic transmission) for his own personal use in January, February and March, 2015, (*id.*, Ex. E, ¶¶ 14-16), even though he had his own personal vehicle, and his wife and son also had personal vehicles.  (*Id.*, Ex. A at 70).

Plaintiff used the company vehicle provided to him for over a year, up until his termination, without incident.  (Def., 56.1, ¶ 21).  On at least one (1) occasion, defendants told plaintiff that he could work from home rather than driving into the office.  (*Id.*, ¶ 23).

At some unspecified point in time during plaintiff's tenure with defendants, he "requested to be assigned more telemarketing and marketing work and less of the . . . estimates [work]," (Def. 56.1, ¶ 24), and defendants "endeavor[ed] to have [him] perform" such work.  (*Id.*, ¶ 25).  During his deposition, plaintiff testified, in pertinent part, as follows:

Q.      Did it occur to you that [defendants] didn't like you working for them?

A.      I don't think [Cifarelli] had that problem.  I think Lisa did.

4

Q. You think Lisa had that problem why?

A. I don't think she wanted anyone else to come into her business.  She wanted to control it only with her husband and every time I made suggestions I felt from her that she didn't want me to get involved with the marketing or telemarketing part of the business.

Q. Which is precisely what you wanted to do; correct?

A. Yes because it was being done every day.

Q. Do you think that that's why you are not working there anymore?

A. I do.  I do. . . .

(Zabell Decl., Ex. A at 161-62; *see also Id.* at 97 [plaintiff's testimony that he believed that one of the reasons why he was terminated by defendants was because "Lisa resented [his] involvement in the marketing area[] . . . [and] saw it as usurping of [sic] her power"]).  Plaintiff further testified that although he "wanted to help [defendants] get to the next level of marketing[,]" he "sensed" during the last ten (10) months or so that he worked for them, that Lisa did not want him to do that, *i.e.*, to get involved in the marketing and telemarketing work.  (*Id.* at 163-64, 169; *see also Id.* at 96-97, 99).  In addition, plaintiff "sensed" that it was not just him to whom Lisa did not want to "give up" the marketing and telemarketing work; he also believed that she did not want to give up that work to anybody.  (*Id.* at 164).  According to plaintiff, Lisa also did not want to work together or exchange ideas with him.  (*Id.* at 166-67; *see also Id.* at 97).

Plaintiff further testified, in relevant part:

Q. But you may have been terminated because Lisa Cifarelli did not want you involved in marketing and telemarketing; correct?

A. I sensed that.  I can't prove it but I sensed that.

. . .

5

> Q.      . . . Tell me what it is exactly that you sensed.
>
> A.      Because Lisa separated herself from me in the marketing and telemarketing of her company's activities that she did not want to accept any input or even work in a joint manner.
>
> Q.      With you?
>
> A.      With me.  However, her husband [Cifarelli] was the person making the decisions for the company on a day to day basis.  He many times overrode her on things that [he] and I had discussed that she had an opposing view and he would come in and say, 'No, I want [plaintiff] to do this.'  So it was [Cifarelli] who was the decision maker.
>
> Q.      But although it was [Cifarelli] who was the decision maker you think that Lisa's not wanting you to get involved may have led to your termination?
>
> A.      Yes, I do.

(Zabell Decl., Ex. A at 168-69).  According to plaintiff, he, as well as "other people," made telephone calls, did telemarketing and tried to build defendants' business every day, but he "could have done that full time."  (*Id.* at 169).  The following colloquy then ensued:

> Q.      Is it possible that Lisa did not want you involved in that because she did not care for your approach in that area?
>
> A.      Could be, yes.
>
> Q.      You had a different approach than her?
>
> A.      Yes, I had a direct approach more direct and I had a marketing plan.  It wasn't just a phone call but it was an introduction to [Crystal Clear].
>
> Q.      That plan involved giving away free services; correct?
>
> A.      It involved, yes.  It involved doing one giveaway free service, yes, as an enticement to a multifaceted large company that could bring a great deal of business. [Cifarelli] liked the plan I put together.
>
> Q.      But Lisa didn't?

> A.   No.  She felt that doing business a little bit at a time and trying to get recommendations is the way to build a business. [Cifarelli] wanted to have a larger approach.  He wanted to get involved more with bringing in large companies[,] condominium complexes and [the] like and he wanted to deal more on a larger scale and that's where I aimed my marketing plan to.

(*Id.* at 170-71).

According to plaintiff, he was never told that Lisa did not like his marketing material.

(Zabell Decl., Ex. A at 155-56).  Plaintiff further testified as follows:

> Q.   Did Lisa . . . like your marketing material?

> A.   I don't know what she liked.  Only she knows.  She offered an alternative.

> Q.   How did she offer the alternative?

> A.   She wrote up the prospecting letter and gave it to [Cifarelli].

> Q.   So you wrote a prospecting letter that she rejected and she wrote her own; is that correct?

> A.   She didn't reject it.  She just didn't acknowledge it.  She wrote her own.

> Q.   Do you ascribe any significance to her not acknowledging your prospecting letter?

> . . .

> A.   She wrote her own letter.  She didn't say I don't like yours.  She said I want to do it like this.  She didn't reject the letter I wrote.

> Q.   Well, did she use your letter or did she use her letter?

> A.   She used her letter.

(*Id.* at 156-57).  The prospecting letter that plaintiff drafted on behalf of defendants indicates that

Crystal Clear services the North and South Forks of Long Island, as well as the Palm Beach

County, Florida area.  (Def. 56.1, ¶ 29).  No reference is made therein to any of the boroughs of

New York City.  (*See* Zabell Decl., Ex. G).

Plaintiff admits that he and Lisa occasionally had work-related disagreements.  (Def. 56.1, ¶ 30).

In March 2015, defendants invited plaintiff to work with them in West Palm Beach, Florida, to prospect potential customers, (Def. 56.1, ¶34), and provided him with living quarters on their property and a Ford Mustang to drive during his tenure in Florida.  (*Id.*, ¶¶ 35-36).

Plaintiff performed an estimate in Florida with which defendants were unhappy. (Def. 56.1, ¶ 37).  With respect to that estimate, plaintiff testified, in relevant part, as follows:

Q.    Were you told that both Lisa and [Cifarelli] were not happy with the prices that you put on an estimate?

A.    One particular estimate.

Q.    Who told you that?

A.    They both did.

Q.    You disagreed with them; correct?

A.    Yes.

Q.    After you came back from West Palm Beach you were told that your services were no longer needed; correct?

A.    I was sent an email not told.

Q.    What did that email tell you?

A.    It said – it had no reasons for termination.

Q.    So it told you that your were terminated?

A.    That's correct.

Q.    So you went down to West Palm Beach, had a disagreement over pricing,

came back up to New York and was sent an email telling you that your
employment was terminated; is that correct?

A.     That is correct.  Yeah, as far as I recall.

(Zabell Decl., Ex. A at 105-06).

Plaintiff concedes that defendants "took issue" with other estimates he had previously
prepared for them in New York, (Def. 56.1, ¶ 38); and testified that "there were issues that came
up on estimates but that's a normal course of business."  (*Id.*, ¶ 39).

Upon plaintiff's return to New York in March 2015, defendants terminated his
employment via email.  (Def. 56.1, ¶ 44).  In April 2015, plaintiff obtained employment doing
telemarketing work, (*id.*, ¶ 48), but his tenure at that position lasted only three (3) days, resulting
in a "mutual termination."  (*Id.*, ¶ 49).

Prior to his involvement in the window cleaning business, plaintiff was terminated from
his previous position at Chase Bank over a commission dispute in 2009.  (Def. 56.1, ¶ 46).
During plaintiff's approximately twenty-five (25) years in the financial industry, he worked for
eleven (11) different companies.  (Plf. 56.1, ¶ 47).

Following the termination of plaintiff's employment, a notebook was discovered in
which, *inter alia*, plaintiff had written the following note, dated February 26th, under the heading,
"Football:" "1) Summer Camps – lend time to Coach[;] 2) Identify open coaching jobs[;] 3)
Contact football people."  (Zabell Decl., Ex. A at 128-36 and Ex. J; Plf. 56.1, ¶ 50).  According
to plaintiff, he "was looking for opportunities to volunteer [his] time," and Cifarelli was aware of
that and "supported [his] football ambition."  (Zabell Decl., Ex. A at 130; *see also* Def. 56.1, ¶
51; Plf. 56.1, ¶ 51).  In addition, plaintiff testified as follows:

> Q.     At the time that you were claiming to Mr. Cifarelli that you could not do estimates you were looking for a coaching job?
>
> A.     No, that's not true.  I could not do 30 estimates a day like he did.
>
> Q.     So you couldn't do 30 estimates a day but you could coach football?
>
> A.     Sure.

(*Id.* at 131).

In his complaint, plaintiff alleged, *inter alia*, that Crystal Clear "provides its employees who perform window cleaning estimates with company cars."  (Complaint ["Compl."], ¶ 20). However, during his deposition, plaintiff testified that he did not know if defendants provided their employees with company cars,  (Zabell Decl., Ex. A at 102), and that he did not know whether the aforementioned allegation in his complaint was truthful or not.  (*Id.* at 103). Specifically, plaintiff testified as follows:

> Q.     Do you know that statement [at paragraph 20 of the complaint] to be truthful or untruthful?
>
> A.     I don't know.  How do I know what [Cifarelli] does with the other estimators?  I don't know.
>
> Q.     I don't know how you would know but I do know that you alleged it in your complaint, sir.
>
> A.     Greben [plaintiff's former counsel] did and I didn't read.  I never saw this document [the complaint] and he asked me to sign several things.  I assumed that they were correct.  I never saw this and I wouldn't have answered that because how could I know what [Cifarelli] did with other estimators.  He might have had a policy to that effect or said that he did but I don't know for sure.
>
> Q.     So you don't know if that allegation is truthful and accurate?
>
> A.     No, I don't.

(*Id.*)

10

Similarly, plaintiff testified that at least one of his responses to defendants' first set of interrogatories, which he certified under penalty of perjury to be true, was inaccurate.  (Zabell Decl., Ex. A at 94-95).


B.      Procedural History

On or about January 26, 2016, plaintiff commenced this employment discrimination action against defendants pursuant to the ADA, the NYSHRL and the NYCHRL.  Specifically, plaintiff alleges: *inter alia*, (i) that defendants failed to provide him with reasonable accommodations, including (a) providing him with a company car that had an automatic transmission, and (ii) permitting him to do marketing and telemarketing work instead of estimates, (*see* Zabell Decl., Ex. A at 86-87); and (ii) terminated his employment because of his disability, *i.e.*, because he did not visit at least thirty (30) stores a day while he was in Florida. (Plf. Ex. F).  Issue was joined by the service of an answer on behalf of defendants on March 31, 2016.  (DE 11).

Defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing plaintiff's claims against them in their entirety and to strike plaintiff's March 28, 2017 letter as an improper sur-reply, and plaintiff moves for the appointment of counsel to represent him in this action.


III.    Discussion

A.      Appointment of Counsel

Section 1915(e)(1) of Title 28 of the United States Code provides that a "court may

11

request an attorney to represent any person unable to afford counsel."  Courts possess substantial

discretion to determine whether appointment of counsel for civil litigants is appropriate, *Ferrelli*

*v. River Manor Health Care Center*, 323 F.3d 196, 203 (2d Cir. 2003), "subject to the

requirement that [they] be 'guided by sound legal principle.'" *Cooper v. A. Sargenti Co., Inc.*,

877 F.2d 170, 171-72 (2d Cir. 1989) (quoting *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d

Cir. 1983)).

When deciding whether to appoint counsel to an indigent civil litigant under §1915(e)(1),

the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position.

*Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015); *see also Leftridge v. Connecticut State*

*Trooper Officer No. 1283*, 640 F.3d 62, 69 (2d Cir. 2011) ("The court properly denies the

plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.");

*Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("[C]ounsel

should not be appointed in a case where the merits of the indigent's claim are thin and his

chances of prevailing are therefore poor."); *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir.

1986) ("[T]he district judge should first determine whether the indigent's position seems likely to

be of substance.")

If the threshold showing has been met, the court should next consider the following

prudential factors:

> "[T]he indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination
> will be the major proof presented to the fact finder, the indigent's
> ability to present the case, the complexity of the legal issues and
> any special reason in that case why appointment of counsel would
> be more likely to lead to a just determination."

*Hodge*, 802 F.2d at 61-62; *see also Dolan v. Connolly*, 794 F.3d 290, 296-97 (2d Cir. 2015)

(applying the *Hodge* factors); *Carmona*, 243 F.3d at 632 (holding that "[o]nly after an initial

finding that a claim is likely one of substance, will we consider secondary factors such as the

factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield

unassisted, and any other reason why in the particular case appointment of counsel would more

probably lead to a just resolution of the dispute").  However, those factors are not exclusive and

"[e]ach case must be decided on its own facts."  *Hodge*, 802 F.2d at 61.

The appointment of *pro bono* counsel is not warranted because, *inter alia*, plaintiff has

adequately and competently set forth his claims and arguments in opposition to defendants'

motion for summary judgment, and appears capable of preparing and presenting his case; the

legal issues presented in this case are not particularly complex; and there is no special reason to

appoint counsel at this time.  Accordingly, plaintiff's application for the appointment of counsel

is denied.

B.      Motion to Strike

Defendants move to strike plaintiff's March 28, 2017 letter to the Court as an improper

sur-reply.  Although my individual rules pertaining to motion practice provide, in relevant part,

that "[n]o rebuttal, sur-reply, etc., shall be accepted," in light of plaintiff's *pro se* status, and the

fact that with the exception of plaintiff's contentions regarding his NYCHRL claims, he raises no

new arguments in opposition to defendants' motion, the Court has considered the arguments

raised by plaintiff in his March 28, 2017 letter.  *See generally Holtz v. Rockefeller & Co., Inc.*,

258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *accord D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 108, n. 2 (2d Cir. 2006).  Accordingly, defendants' motion to strike is denied.

### C.    Summary Judgment

#### 1.    Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Zaretsky v. William Goldberg Diamond Corp.*, 820 F.3d 513, 519 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  (emphasis added) (internal quotations and citation omitted)); *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 142 (2d Cir. 2014) ("The role of the court on a summary judgment motion is to determine whether, as to any material issue, a genuine factual dispute exists." (quotations and citation omitted)).  On a motion for summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d

14

18, 25 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 49, 196 L. Ed. 2d 29 (2016) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the nonmoving party," *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quotations and citation omitted); *accord Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dalberth*, 766 F.3d at 182 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *see also Apotex*, 823 F.3d at 59. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "[W]hen the moving party has carried its burden. . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d

686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer

"some hard evidence showing that its version of the events is not wholly fanciful[.]"  *Miner v.*

*Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).  The

nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury

could reasonably find for that party."  *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012)

(quotations, brackets and citation omitted).  "'The mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient' to defeat a summary judgment

motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at

252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory

assertions."  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Fabrikant*, 691 F.3d at

205 ("[C]onclusory statements or mere allegations will not suffice to defeat a summary judgment

motion." (quotations and citation omitted)).   Since "there is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . .

[i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment

may be granted."  *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (quotations and citations

omitted).

Summary judgment is warranted, "after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *accord*

*El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187, 198 L. Ed.

2d 255 (2017); *see also Crawford*, 758 F.3d at 486 ("[W]here the nonmoving party will bear the

burden of proof on an issue at trial, the moving party may satisfy its burden [of showing the absence of a genuine dispute as to any material fact] by pointing to an absence of evidence to support an essential element of the nonmoving party's case[.]" (quotations, alterations and citation omitted)).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S. Ct. 2548; *accord Crawford*, 758 F.3d at 486; *see also Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.")  "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548.  Accordingly, "[w]here, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotations and citation omitted).

2.      The ADA and NYSHRL Claims[3]

Title I of the ADA provides, *inter alia*, "[n]o covered entity shall discriminate against a

qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."  42 U.S.C. § 12112(a).

"The elements of a claim under the ADA are that: (1) the employer is subject to the ADA;

(2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her

employer; (3) she was otherwise qualified to perform the essential functions of the job with or

without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the

adverse action was imposed because of her disability."  *Davis v. New York City Dep't of Educ.*,

804 F.3d 231, 235 (2d Cir. 2015); *accord McMillan v. City of New York*, 711 F.3d 120, 125 (2d

Cir. 2013).

"Claims alleging discrimination under the ADA are subject to the burden-shifting

analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.

Ed. 2d 668 (1973)."  *Davis*, 804 F.3d at 235; *accord McMillan*, 711 F.3d at 125.  "Under that

framework, once a plaintiff produces minimal evidentiary support for the claim of discriminatory

motivation, the burden of production shifts to the employer to articulate a non-discriminatory

_____

[3]  Claims under the NYSHRL are analyzed under the same standards as applicable to the
ADA.  *See Kemp v. Metro-North R.R.*, 316 F. App'x 25, 26 (2d Cir. Mar. 19, 2009) (summary
order); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184, n. 3 (2d Cir. 2006).  The NYSHRL
provides, *inter alia*, "[i]t shall be an unlawful discriminatory practice: (a) For an employer . . .
because of an individual's . . . disability . . . to refuse to hire or employ or to bar or to discharge
from employment such individual or to discriminate against such individual in compensation or
in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1).

reason for the adverse employment action." *Davis*, 804 F.3d at 235; *see also Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d Cir. 2015) ("A plaintiff establishes a prima facie case of discrimination by demonstrating that he suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent. . . . Once the plaintiff shows this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." (quotations and citation omitted)).  "[O]nce the employer has set forth its non-discriminatory justification, the plaintiff must then produce evidence capable of carrying the burden of persuasion that the employer's action was at least in part motivated by discrimination." *Davis*, 804 F.3d at 235; *see also Cortes*, 802 F.3d at 231 (holding that under the *McDonnell Douglas* analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." (quotations and citation omitted)).

a.      Reasonable Accommodation Claims

"The ADA and the NYSHRL require an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer." *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A) and N.Y. Exec. L. § 296(3)(a)).  The ADA defines the term "reasonable accommodation" to include:

"(A) making existing facilities used by employees readily accessible to and usable

19

by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."

42 U.S.C. § 12111(9).

To maintain a failure to accommodate claim under either the ADA or the NYSHRL, "an employee must show that: (1) he is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Noll*, 787 F.3d at 94 (quotations, alterations and citation omitted); *accord Sheng v. M&T Bank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017). "In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment." *McMillan*, 711 F.3d at 126 (quotations, alterations and citation omitted); *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137-38 (2d Cir. 1995) ("[T]he plaintiff bears the burden of production and persuasion on the issue of whether she is otherwise qualified for the job in question. . . . A plaintiff cannot be considered 'otherwise qualified' unless she is able, with or without assistance, to perform the essential functions of the job in question. . . . It follows that the plaintiff bears the burden of proving either that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions.")

Although a reasonable accommodation "must be effective[,] . . . employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95. "All that is required is effectiveness." *Noll*, 787 F.3d at 95; *see also Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) ("[A]n employer need only provide an accommodation that is sufficient to meet the job-related needs of the individual being accommodated and is not required [sic] to meet the personal preferences of disabled employees." (quotations and citation omitted)).

### i.      Company Car

Defendants have demonstrated their entitlement to judgment as a matter of law on plaintiff's ADA and NYSHRL claims alleging that they failed to accommodate his disability by providing him with a company car that had automatic transmission by showing that plaintiff's evidence is insufficient to establish an essential element of that claim, *i.e.*, that defendants refused to make a reasonable accommodation that would allow plaintiff to perform the essential functions of his employment. "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position ... [or] to enjoy equal benefits and privileges of employment.'" *Noll*, 787 F.3d at 94 (quoting 29 C.F.R. § 1630.2(o)(1)(ii), (iii)).

It is undisputed that defendants provided several reasonable accommodations to plaintiff after his hospitalization, including telling plaintiff not to worry about the amount of time he took off or jobs he could complete; allowing plaintiff to work part-time; permitting plaintiff to work

from home on at least one (1) occasion; and allowing plaintiff to perform some telemarketing and marketing work.  The record is bereft of any evidence from which a rational finder of fact could reasonably find that plaintiff required the use of a vehicle with an automatic transmission in order to perform the essential functions of his job.  Indeed, except for the period of time that plaintiff worked for defendants in Florida in March 2015, plaintiff used the same company vehicle with a manual transmission for the entire time that he worked for defendants, including the approximate fourteen (14) month period following his surgery, *i.e.*, from in or about December 2013 or January 2014 until in or about March 2015, without incident, and he never indicated any difficulties performing his job or driving the assigned company vehicle to defendants.[4]  Absent any evidence from which it may reasonably be inferred that plaintiff required the use of a vehicle with an automatic transmission in order to perform the essential functions of his job, defendants' failure to accommodate his personal preference for a different vehicle with an automatic transmission does not support a claim of unlawful discrimination.  Accordingly, the branch of defendants' motion seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's ADA and NYSHRL claims based upon defendants' failure to provide him with a vehicle with an automatic transmission is granted and defendants are granted judgment as a matter of law dismissing plaintiff's ADA and NYSHRL claims based upon defendants' failure to provide him with a vehicle with an automatic transmission in their entirety with prejudice.

---

[4]  Indeed, plaintiff even used the same company vehicle, with the manual transmission, for his own personal use in January, February and March 2015, (Zabell Decl., Ex. A at 124 and Ex. E at ¶¶ 14-16), notwithstanding that he had his own personal vehicle, as well as two (2) other family vehicles.

ii.      Reassignment

As set forth above, "[t]he plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment, including the existence of a vacant position for which []he is qualified." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009); *see also Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 567 (2d Cir. 2000) ("[A]n ADA plaintiff complaining of his employer's failure to provide a reasonable accommodation[] bears both the burden of production and the burden of persuasion on the question whether a suitable vacancy existed at the time he sought transfer.")  "An ADA plaintiff does not satisfy her burden to identify a potential accommodation merely by reciting the formula that her employer could have reassigned her.  Instead, she must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned." *McBride*, 583 F.3d at 97–98; *see also Jackan*, 205 F.3d at 566-67.  ("The burden of persuasion on the existence of an effective accommodation is not satisfied by mere speculation. . . . [A] plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred. " (quotations omitted)).

Since plaintiff has failed to demonstrate that defendants had a vacant marketing or telemarketing position available at the time of his termination, no rational finder of fact could find in his favor on his failure to accommodate claims based upon defendants' failure to reassign him to such work.  *See, e.g. Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017), *cert.*

23

*denied*, 138 S. Ct. 359, 199 L. Ed. 2d 264 (2017) (affirming the dismissal of the plaintiff's failure

to accommodate claims on the basis, *inter alia*, that the plaintiff failed to show that a vacant

position existed at the time of this termination).   Accordingly, the branch of defendants' motion

seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

dismissing plaintiff's ADA and NYSHRL claims based upon defendants' failure to reassign him

to telemarketing or marketing work is granted and defendants are granted judgment as a matter of

law dismissing plaintiff's ADA and NYSHRL claims based upon defendants' failure to reassign

him to telemarketing or marketing work in their entirety with prejudice.


b.      Termination Claims

"Under the last element [of an ADA claim], a plaintiff must show that the adverse

employment action took place under circumstances giving rise to an inference of discrimination."

*Davis*, 804 F.3d at 235 (quotations and citation omitted).   The question of whether a plaintiff

must demonstrate that the alleged disability discrimination was a "but-for" cause of the adverse

employment action, or merely a "motivating factor," is unsettled in this Circuit.   *See Eisner v.

Cardozo*, 684 F. App'x 29, 30 (2d Cir. Mar. 24, 2017) (summary order); *Kelly v. North Shore-

Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 286 (E.D.N.Y. 2016).   However, like the

Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and unlike

the antidiscrimination provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e, *et seq.*, and specifically 42 U.S.C. § 2000e-2(m), the text of the ADA "does not

provide that a plaintiff may establish discrimination by showing that [disability] was simply a

24

motivating factor."[5]  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 129 S. Ct. 2343, 174 L.

Ed. 2d 119 (2009) (distinguishing ADEA disparate treatment claims from Title VII

discrimination claims based upon the textual differences between the statutes and holding that

the text of the ADEA does not authorize a mixed-motives age discrimination claim); *see also*

*University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2532-33, 186 L. Ed.

2d 503 (2013) (distinguishing between Title VII discrimination claims and Title VII retaliation

claims based upon textual and structural differences within those respective sections of the

statute and holding that "Title VII retaliation claims must be proved according to traditional

principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).") [6]

   As set forth above, Title I of the ADA prohibits employment "discriminat[ion] against a

qualified individual *on the basis of* disability . . . ." 42 U.S.C. § 12112(a).  The term "on the basis

of" means "according to" or "based on," https://www.merriam-webster.com/dictionary/

---

   [5]  "The ADEA provides, in relevant part, that '[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.'"  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (alterations and emphasis in original) (quoting 29 U.S.C. § 623(a)(1)).  In *Gross*, the Supreme Court held that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act[,]" *id.*, and that, therefore, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision[,]" in order to establish a disparate treatment claim under the ADEA.  *Id.*

   [6]  Like the ADEA, the antiretaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), "makes it unlawful for an employer to take adverse employment action against an employee 'because' of certain criteria."  *Nassar*, 570 U.S. 338, 133 S. Ct. at 2528.  Accordingly, the Supreme Court held that "[g]iven the lack of any meaningful textual difference between the text in th[e] [Title VII antiretaliation] statute and the one in *Gross*, . . . Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Id.*

25

on%20the%20basis%20of (last visited Jan. 30, 2018), and the word "basis" means, in relevant

part, "something on which something else is established or based," https://www.merriam-

webster.com/dictionary/basis (last visited Jan. 30, 2018), or "the justification for or reasoning

behind something." https://en.oxforddictionaries.com/definition/basis (last visited Jan. 30, 2018).

Thus, like the term "because of" in the ADEA and the antiretaliation provision of Title VII, *see*

*Gross*, 557 U.S. at 176, 129 S. Ct. 2343 and *Nassar*, 570 U.S. 338, 133 S. Ct. at 2528,

respectively, the ordinary meaning of the ADA's requirement that a covered entity, *i.e.*, the

employer, took adverse action "on the basis of" disability is that disability was the "reason" or

"justification" behind the employer's decision to act.  Accordingly, pursuant to the Supreme

Court's holdings in *Nassar* and *Gross*, plaintiff must prove that his disability was a "but-for"

cause of defendants' decision to terminate his employment in order to establish his

discrimination claim against defendants under the plain language of the ADA.  *See also Safeco*

*Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63-64, and n. 14, 127 S. Ct. 2201, 167 L. Ed. 2d 1045

(2007) (indicating that "[i]n common talk, the phrase 'based on' indicates a but-for causal

relationship and thus a necessary logical condition," and that the statutory phrase, "based on," has

the same meaning as the phrase, "because of" (internal quotation marks omitted)).  "This requires

proof that the unlawful [discriminatory act, *i.e.*, plaintiff's termination] would not have occurred

in the absence of the alleged wrongful action or actions of the employer[,]" *Nassar*, 570 U.S.

338, 133 S. Ct. at 2533, and "[i]t is . . . textbook tort law than an action is not regarded as a cause

of an event if the particular event would have occurred without it."  *Id.* at 2525.

Other than plaintiff's conclusory allegations, the record is bereft of any admissible

evidence from which a rational trier of fact could reasonably find that defendants terminated

plaintiff's employment because of his disability.  *See Delaney v. Bank of Am. Corp.*, 766 F.3d

163, 170 (2d Cir. 2014) (holding that absent any admissible evidence in support of his ADEA

claims, the plaintiff's conclusory allegations did not suffice to create a genuine issue of fact as to

whether his age was the but-for cause of his termination); *Gorzynski v. JetBlue Airways Corp.*,

596 F.3d 93, 101 (2d Cir. 2010) ("Even in the discrimination context, . . . a plaintiff must provide

more than conclusory allegations to resist a motion for summary judgment[.]"); *Cameron v.

Community Aid For Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) (holding that

"[p]urely conclusory allegations of discrimination, absent any concrete particulars, are

insufficient" to defeat summary judgment in an ADA case (quotations and citation omitted)).

Indeed, plaintiff repeatedly testified that he believed that he was terminated because Lisa did not

want him involved in the marketing and telemarketing work of the business, (Zabell Decl., Ex. A

at 96-97, 99, 161-64, 168-69), not because of his disability.[7]  Moreover, other evidence in the

record suggests that plaintiff and Lisa occasionally had work-related disagreements, (Def. 56.1, ¶

30); that defendants "took issue" with some of the estimates that plaintiff prepared for them, (*id.*,

¶ 38); and that defendants terminated plaintiff's employment upon his return from Florida

following a disagreement he had with them regarding an estimate he had prepared.  (*Id.*, ¶ 37;

Zabell Decl., Ex. A at 105-06).  In addition, the evidence demonstrates that defendants attempted

---

[7]  In addition, in his opposition to defendants' motion, plaintiff provided a form that he
submitted to the New York State Department of Labor, which he certified to be true under
penalty of perjury on April 16, 2015, indicating, in relevant part, that "[t]here was no incident
[that resulted in his discharge].  I just got a termination notice with no reasons stated.  When I ask
[sic] David Cifarelli he said that he could not afford to pay me."  (Plf. Ex. E).  In addition,
plaintiff stated: (i) "I was told that they could not afford to pay me.  Business is slow[,]" (*id.*);
and (ii) "When I asked why I was fired David Cifarelli said we can't afford you.  Business is
slow."  (*Id.*)

to accommodate plaintiff's disability following his hospitalization by, *inter alia*, permitting him to work on a part-time basis, (Def. 56.1, ¶¶ 11-13); allowing him to work from home on at least one (1) occasion, (*id.*, ¶ 23); and permitting him to perform some telemarketing and marketing work. (*Id.*, ¶¶ 24-25; Zabell Decl., Ex. A, ¶¶ 168-69). *See, e.g. Fall v. New York State United Teachers*, 289 F. App'x 419, 421-22 (2d Cir. July 10, 2008) (summary order) (holding that the fact that the defendant "was aware of and accommodated [the plaintiff's] claimed hearing impairment from the onset of her employment . . . militate[d] against a later finding of discrimination."); *Miller v. Taco Bell Corp.*, 204 F. Supp. 2d 456, 464 (E.D.N.Y. 2002) (finding that the fact that the plaintiff was hired and fired by the same person, who had full knowledge of her hearing problems, and worked for him for years prior to her termination, "alone militate[d] strongly against a finding of discrimination."); *Petrunti v. Cablevision*, No. 08-cv-2277, 2009 WL 5214495, at * 11 (E.D.N.Y. Dec. 30, 2009) (finding no genuine dispute of material fact on the issue of discriminatory intent where, *inter alia*, "the undisputed record show[ed] that defendant attempted to accommodate plaintiff's hearing pain by allowing her time off and making adjustments to her schedule.")

In his opposition to defendants' motion, plaintiff submits a chain of text messages between himself and Cifarelli, dated Monday, April 13, at 9:28 AM. (Plf. Ex. F). The first message, presumably from plaintiff, states, "Good morning David I just wanted to be certain that you said you let me go because I didn't visit at least 30 Stores a day in Florida or was there another reason[.]" The responsive text message states, "That was one of the many things that I was not happy with[.]" Plaintiff's reply text message states, "What were the other reasons." (*Id.*) There are no further text messages in the record. Those text messages are insufficient to raise a

genuine dispute of material fact on the issue of whether plaintiff's disability was a but-for cause

of his termination. *See generally Fabrikant*, 691 F.3d at 205 ("'The mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient' to defeat a summary

judgment motion." (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505)); *e.g. Cardo v.*

*Arlington Cent. Sch. Dist.*, 473 F. App'x 21, 23 (2d Cir. Mar. 28, 2012) (summary order) (finding

that even taking the plaintiff's assertion that he was terminated for the reasons stated in the

defendant's letter as true, there was "insufficient evidence to conclude that his age was the

'but-for cause' of his termination because, *inter alia*, although "the letter did suggest that [the

plaintiff] was not physically able to perform the duties of . . . [his job], the letter asserted inability

to perform based on specific cited incidents, and did not reference [the plaintiff's] age or infer

incapacity from age[;]" and the plaintiff admitted that the . . . officials [of defendant] had never

made any comments or criticisms with respect to his age prior to his termination.")

Neither does Cifarelli's alleged bragging about the number of estimates he could do in a

day, (*see* Zabell Decl., Ex. A at 73-74, 176-77), which did not reference plaintiff's disability or

infer his incapacity due to disability, and was unrelated to plaintiff's termination, raise a genuine

dispute of material fact on the issue of whether plaintiff's disability was a but-for cause of his

termination.  *See, e.g. Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92, n. 2 (2d Cir.

2001) (declining to discuss statements that were "either age-neutral on their face or 'stray

remarks' unrelated to [the plaintiff's] discharge."); *Sloan v. United Techs. Corp.*, 596 F. App'x

35, 36 (2d Cir. Mar. 4, 2015) (summary order) ("The stray remarks cited by plaintiff were either

facially race neutral or too removed from plaintiff's discharge to support an inference of

discriminatory causation.")  Accordingly, the branch of defendants' motion seeking summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's ADA and NYSHRL discrimination claims based upon the termination of his employment is granted and defendants are granted judgment as a matter of law dismissing plaintiff's ADA and NYSHRL discrimination claims based upon defendants' termination of his employment in their entirety with prejudice.

### 3. NYCHRL Claims

Although plaintiff did not respond to the branch of defendants' motion seeking summary judgment dismissing his NYCHRL claims against them in his opposition to the motion, plaintiff alleges in his March 28, 2017 letter, in essence, that since he occasionally performed estimates for defendants in Manhattan, Queens County and Kings County, he has sufficient ties with the City of New York to support a NYCHRL claim.

The NYCHRL is intended to cover "inhabitants" of New York City, or people "who work in the city." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289, 291, 907 N.Y.S.2d 145, 933 N.E.2d 744 (N.Y. 2010). "The New York Court of Appeals has adopted an 'impact' test for nonresident plaintiffs seeking recovery under the NYCHRL[,]" *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182-83 (2d Cir. 2016), pursuant to which a plaintiff must "demonstrate that her termination had an 'impact' within NYC." *Id.* at 183. Moreover, "[u]nder the NYCHRL the impact of the employment action must be felt *by the plaintiff* in NYC." *Id.* (emphasis in original); *accord Fried v. LVI Servs., Inc.*, No. 10-cv-9308, 2011 WL 4633985, at * 13 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 500 F. App'x 39 (2d Cir. Oct. 15, 2012). Where, as here, the plaintiff's only

contacts with New York City are tangential[8], the impact test is not satisfied.  *See, e.g. Vangas*, 823 F.3d at 182; *Fried*, 2011 WL 4633985, at * 13.  Since plaintiff is not a resident of New York City, and the record is bereft of any evidence demonstrating that plaintiff felt any impact from defendants' alleged discriminatory conduct in New York City, the branch of defendants' motion seeking summary judgment dismissing plaintiff's NYCHRL claims pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and defendants are granted judgment as a matter of law dismissing plaintiff's NYCHRL claims against them in their entirety with prejudice.

IV.     Conclusion

For the reasons set forth above, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiff's claims against them in their entirety is granted and defendants are granted judgment as a matter of law dismissing

---

[8]  Based upon plaintiff's time records for the period from March 17, 2014 to March 16, 2015, plaintiff performed only approximately fourteen (14) estimates for prospective clients within New York City between April 8, 2014 and November 26, 2014.  Nine (9) of those estimates were performed in April and May; plaintiff performed only one (1) estimate within New York City during each of the months from July to November; and plaintiff did not perform any estimates within New York City after November 26, 2014.  (*See* Zabell Decl., Ex. H).  In addition, in May 2014, plaintiff delivered "new jars" to certain businesses in Queens, presumably as a marketing tactic, and refilled those jars approximately bi-monthly during the months from June to September. The record is devoid of any evidence indicating that plaintiff had any work-related contacts within New York City after November 26, 2014 until his termination in March 2015.

plaintiff's claims against them in their entirety with prejudice.  The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

_____
/s/

SANDRA J. FEUERSTEIN

United States District Judge

Dated: February 2, 2018

Central Islip, New York